[No. E006935. Fourth Dist., Div. Two. June 19, 1990.]

In re ANDREA G., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v.
DIANA G., Defendant and Appellant.

549

**550**

### COUNSEL

Valerie L. Nalbantian, under appointment by the Court of Appeal, for Defendant and Appellant.

William C. Katzenstein, County Counsel, and Gloria E. Sydoriak, Deputy County Counsel, for Plaintiff and Respondent.

Donna L. Groman, under appointment by the Court of Appeal, for Minor.

### OPINION

DABNEY, J.—On June 29,1987, a petition for juvenile dependency pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (d)[1] was filed alleging that Diana G. exercised inadequate parental care and control over minor, Andrea G. Specifically, the petition alleged that Diana repeatedly pricked Andrea's skin with a hypodermic needle in an attempt to draw blood from Andrea; Diana encouraged Andrea to eat vomit on numerous occasions; Diana hit Andrea on or about the face on numerous occasions causing severe emotional trauma to Andrea; Diana had no stable residence; Diana was admitted to Ward B of the County Medical Center pursuant to section 5150 on June 25, 1987; and Diana suffered from brain damage which impaired her ability to parent Andrea adequately.

---

[1] All further references to code sections will be to Welfare and Institutions Code unless otherwise indicated.

The court amended the third allegation to read that Diana slapped Andrea's face on numerous occasions when Diana was angry and found the allegation concerning Diana's brain damage untrue. Diana's reunification plan required supervised visitation, successful completion of a parent education program, successful completion of therapy until the therapist and the department of public social services (DPSS) deemed therapy was no longer necessary, maintenance of an adequate home for Andrea, attendance at monthly appointments with social workers, and cooperation with DPSS. The objectives were establishment of a stable environment and appropriate parental relationship with Andrea, and resolution of Diana's emotional and/or behavioral problems which led to Andrea's removal.

Andrea was continued as a dependent through the fall of 1988. On December 22, 1988, the parties reached a stipulated agreement that the dependency would be continued for six months and the permanency planning and placement issues would be continued until January 19, 1989, the eighteen-month review.

The contested permanency planning and placement hearing occurred in May 1989. The court found by clear and convincing evidence that return of Andrea to her mother would create a substantial risk of detriment to the well-being of Andrea. The court placed Andrea with her maternal aunt and uncle and adopted long-term foster care as a permanent plan.

FACTS

Andrea told her grandmother and later told sheriff's deputies that her mother, Diana G., attempted to withdraw blood from Andrea's arm using a hypodermic needle. Diana said she needed some "good blood" from Andrea.

Andrea also reported that her mother encouraged her to eat frozen vomit. Sheriff's deputies discovered frozen vomit covered with chocolate syrup in Diana's freezer. Diana told differing stories to different people about why the vomit was in the freezer.

Diana did not have steady employment or a stable home when the petition was filed. She also did not get along well with her extended family which had provided care for Diana and Andrea in the past.

The remaining facts appear in the discussion of the issue to which they pertain.

DISCUSSION

I

SUFFICIENCY OF EVIDENCE

■ Diana argues that there was insufficient evidence of detriment to Andrea if returned to Diana's custody. In particular, Diana urges that the court failed to make findings regarding her efforts, progress and compliance with the reunification plan. She notes that she complied with the reunification plan by completing a parenting class, attending therapy, cooperating with the social worker, visiting Andrea regularly, and maintaining a home.

Section 366.25, subdivision (c) requires that the court first determine whether the minor should be returned to her parent under section 366.2, subdivision (e). That section requires the court to determine whether return of the child to her parent would create a substantial risk of detriment to the child. To make that determination, the court is required to look into the efforts and progress by the parent and her cooperation with reunification and to make appropriate findings. (§ 366.2, subd. (e).)

The court made an express finding concerning detriment but made no express finding concerning Diana's efforts, progress and cooperation. The court heard extensive testimony and accepted into evidence social workers' reports and therapists' evaluations, which included references to Diana's efforts, progress and cooperation.

Diana cites *In re Venita L.* (1987) 191 Cal.App.3d 1229, 1239 [236 Cal.Rptr. 859], which states that an express finding of detriment is necessary. As previously discussed, the juvenile court made that finding in this case. Diana has not cited any authority requiring express findings concerning the elements which compose the detriment finding. Since the juvenile court received evidence concerning these elements, it impliedly took them into consideration when it made its determination regarding detriment.

■ In determining whether a judgment is supported by substantial evidence, " 'the [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [that [long-term foster care] is appropriate based on clear and convincing evidence].' [Citations.]" *(In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198].)

Dr. Ryan evaluated Diana twice. He diagnosed her as a schizotypal personality which is a long-term condition. He testified that Diana's compliance with the reunification plan was superficial. Her housing situation was not stable or suitable for Andrea. Her job situation was unstable as well. She would be unable to care for Andrea when under stress. While she had completed therapy, it had only stabilized her condition. She had not changed sufficiently for reunification because she still had no insight or cognitive control and was unpredictable. Without insight, she could not protect minor and would not stop her own activities which harm Andrea.

During Diana's supervised visitations with Andrea, the social worker observed that Diana always divided the gifts she brought for Andrea between herself and Andrea. Diana claimed she had purchased things for Andrea when Andrea said she had not and also claimed Andrea had lost things when Andrea said it was not true. Andrea told the social worker she did not want to be left alone with Diana and related that Diana used to tell Andrea to insert carrots and zucchini in her rectum. During one visit, Diana took Andrea out to dinner for Andrea's birthday. Diana ordered only one dinner and began eating the dinner herself until the social worker suggested Diana see that Andrea receive some food. The social worker observed that Diana's relationship with Andrea was more like that of peers than of parent and child.

Diana continued to deny responsibility for the acts which resulted in Andrea's removal from her custody. Reunification and successful treatment cannot occur until Diana accepts responsibility for her actions. (*In re Jessica B.* (1989) 207 Cal.App.3d 504, 516 [254 Cal.Rptr. 883].) Diana's reactions to the dependency and her explanations for the incidents leading to dependency were rambling and nonsensical. She asked the social worker if she could sue Andrea when Andrea becomes 18 for statements Andrea has made about her. Diana hypothesized that someone was threatening Andrea to make these statements and that someone who looked like Diana tried to make Andrea eat frozen vomit and withdraw blood from Andrea. Her story involved Diana's own childhood, another child who had a baby and injection of blood into Diana's arm to make her look like someone else. Diana related this story to the social worker just one and a half months before the permanency planning hearing. At that point, Diana had received reunification services, which included a period of therapy, for over a year and a half. Diana confirmed to the social worker that she had lived in several residences since the dependency began, that her job was unstable and that she was failing her classes.

Andrea's therapist testified that Andrea needs a stable and supportive environment with a permanent living situation, a permanent school

environment and healthy, stable relationships. It is obvious from Dr. Ryan's evaluation and the social worker's observations that Diana cannot provide the environment Andrea needs and has not complied with the reunification plan.

*In re Heather P.* (1988) 203 Cal.App.3d 1214, 1228 [250 Cal.Rptr. 468], which states mental illness alone is not sufficient for a finding of detriment, is distinguishable. In the present case, there is abundant evidence of how Diana's schizotypal personality disorder prevents her from adequately parenting Andrea.

## II

### SECTION 366.25, SUBDIVISION (C) FINDINGS

Diana argues that the court erred in failing to determine that there was a substantial probability that Andrea would not be returned to Diana's custody within six months pursuant to section 366.25, subdivision (c). The juvenile court did not expressly make this finding.

The Attorney General responds that section 366.25, subdivision (c) does not apply to permanency planning hearings. Subdivision (a) of that section sets forth the purpose of section 366.25 as providing stable, *permanent* homes for children. Subdivision (d) states that if "there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor." (§ 366.25, subd. (d).) This wording implies that such a finding is necessary before a permanent plan is developed. (Cf. *In re Elizabeth G.* (1988) 205 Cal.App.3d 1327, 1332 [253 Cal.Rptr. 161],) The court never expressly made this determination in this case. At the 12-month permanency planning hearing, all parties signed a stipulated agreement for continued dependency. Impliedly, permanency planning was delayed then because there was a probability of reunification within six months. Therefore, the court was required to make a contrary determination at the 18-month permanency hearing as a prerequisite for long-term foster care as a permanent plan. (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 83 [261 Cal.Rptr. 462].)

The question remains whether this finding must be express or may be implied from the record. We determine that it may be implied. (*Corienna G., supra,* 213 Cal.App.3d at p. 83; cf. *In re Albert B.* (1989) 215 Cal.App.3d 361, 374 [263 Cal.Rptr. 694]; contra, *In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1209 [230 Cal.Rptr. 332].) There is no practical purpose for remand in this case when it is obvious from the record that Andrea would not be returned to Diana's custody within six months.

Nor was Diana prejudiced by the court's lack of express determination. Diana knew that the purpose of the hearing was to determine a permanent plan for the minor since she testified at the 18-month permanency planning hearing about her preferences for Andrea's placement. (*Corienna G., supra,* 213 Cal.App.3d at pp. 84-85.)

There was ample evidence to imply such a finding. Dr. Ryan testified that reunification would not be possible in the foreseeable future. The social worker recommended that Andrea not be returned to Diana's custody. Andrea consistently insisted that she did not want to return to her mother. As previously discussed, the reports and evaluations clearly show that Diana would not be able to provide the environment Andrea needed within the next six months. Remand is not necessary here.

## III

### CONJOINT THERAPY

■ Diana next asserts that the court erred in failing to order conjoint therapy between Diana and Andrea. Dr. Ham, Diana's therapist, reported that he could not determine whether reunification was possible without conjoint therapy.

Section 361.5, subdivision (a) provides for 12 months of reunification services plus a 6-month extension on a proper showing. Diana received reunification services for more than 18 months. If a child's placement is long-term foster care, the court may order further reunification services for up to six months if the parent proves by a preponderance of the evidence that further efforts at reunification are the best alternative for the minor. (§ 366.3, subd. (c).) Some courts interpret this section as allowing the parent to independently pursue reunification only. (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1461, fn. 4 [234 Cal.Rptr. 84].) Assuming that the court did have discretion to order further reunification services beyond the permanency plan, we examine the record to determine whether the court abused its discretion. (*Corienna G., supra,* 213 Cal.App.3d at p. 81.)

The court ordered Andrea's therapist to determine whether conjoint therapy would be possible. Andrea's therapist testified that Andrea was very negative and fearful about conjoint therapy. Andrea is afraid of what her mother would do and say during conjoint therapy. Her therapist stated that conjoint therapy was not necessarily the most efficient way of dealing with Andrea's fears about her mother and that Andrea should have a say in whether it occurs. In addition, her therapist testified that conjoint therapy is not indicated right now because of Andrea's resistance and because the

therapist would have to know more about Diana. There must be changes in Diana's behavior first, such as interaction during visitation and taking responsibility for what happened and its impact on Andrea.

Andrea, who was 12 years old at the time she testified, adamantly insisted during her testimony that she did not want conjoint therapy with her mother. Andrea stated that she does not want to talk about past incidents with her mother because Andrea does not want to hurt Diana and because Diana does not understand the consequences of her own actions and looks as if she has been betrayed when Andrea mentions the past incidents.

Dr. Ryan testified that conjoint therapy is not necessary to determine whether Diana is capable of parenting but, at some point, it would be necessary for reunification. Dr. Ryan urged leaving much of the decision up to Andrea. Much work needs to be done before conjoint therapy could be successful; Diana's motivation must change first.

The court did not abuse its discretion in failing to order conjoint therapy.

## IV

### PLACEMENT

■ Diana argues that Andrea's placement with Diana's sister, Mrs. Lewis, is inappropriate. DPSS concurs.

Diana asserts that the court erred in placing greater weight on placement with a relative because section 361.3, subdivision (a) requires only temporal preference for placement with a relative. "[P]referential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . . [¶] 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subds. (a), (c).)

When placing Andrea with her maternal aunt, the court stated that it found no disqualifying factors under section 361.3, subdivision (a). This statement indicates that the court properly considered the factors in that statute rather than placing Andrea with her relatives only because the statute compelled it to give relative placement more weight.

"In determining whether [placement with a relative] is appropriate, . . . the court shall consider the ability of the relative to provide a secure and stable environment for the child. Factors to be considered in that assessment include, but are not limited to, the good moral character of the

relative; the ability of the relative to exercise proper and effective care and control of the child; the ability of the relative to provide a home and the necessities of life for the child; which relative is most likely to protect the child from his or her parents; which relative is most likely to facilitate visitation with the child's other relatives . . . and the best interests of the child." (§ 361.3, subd. (a).) Diana points to a history of fighting in the Lewis home, problems with Mrs. Lewis's oldest child, and past use of marijuana by Mr. Lewis as evidence that it was an inappropriate placement.

Mrs. Lewis testified that through counseling and cooperation with school officials, her oldest son's behavioral problems had ceased and his grades had improved. Marriage counseling had ended the family arguments and Mr. Lewis's occasional marijuana use. Mrs. Lewis testified that drugs no longer were used or allowed in her house. Although Mrs. Lewis had once been a topless dancer, she no longer is one and does not intend to become one again. The Lewises are buying the home they live in, and Andrea will have her own room. Mr. Lewis has been steadily employed since age 16 so they are able to care for Andrea financially. Mrs. Lewis will continue Andrea's counseling and will work with the school to meet Andrea's special educational needs. Mrs. Lewis loves Diana and will allow the court ordered visitation between Diana and Andrea in her home. She testified that she is aware of Andrea's needs, loves her and wants to help her.

All the questions regarding the Lewis family's moral character, ability to exercise care and control and ability to protect Andrea were resolved. The Lewises are able to provide an adequate home (the social worker said the home was not unsanitary). They are able to meet Andrea's needs (sufficient income and food; willingness to continue counseling and assist with education). Mrs. Lewis will allow visitation between Andrea and Diana. In addition, Andrea expressed a desire to live with the Lewises.

Placement of Andrea with her maternal aunt was appropriate under section 361.3, subdivision (a).

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McDaniel, J., concurred.